Thank you, Your Honor. Robert Burgoyne for Appellant, National Conference of Bar Examiners. And I'd like to reserve five minutes for rebuttal, if I could, please. Stephanie Enyart is legally blind. She was offered most, but not all, of the testing accommodations that she requested when she had to sit for the Multistate Professional Responsibility Examination and the Multistate Bar Examination. Only her request to take the exams in a computer format with software that she preferred was denied. She then filed this lawsuit, claiming that the denial of her requested testing format was a violation of her rights under the Americans with Disabilities Act. When Ms. Enyart's counsel wrote to the National Conference of Bar Examiners in September 2009, regarding Ms. Enyart, he noted that he was writing on behalf of Ms. Enyart, the National Conference of Bar, I'm sorry, the National Federation of the Blind, and all similarly situated blind or visually impaired individuals. Ten years ago, the National Federation of the Blind would have applauded the National Conference of Bar Examiners for making its examinations available in all four of the formats that are routinely used by blind individuals to access tests and to secure an equal opportunity when taking standardized tests. Today, the National Federation of the Blind is supporting a plaintiff who has accused the National Conference. But that's ten years old, and there's been a lot of technological changes in ten years, right? Are we supposed to just ignore all that? Your Honor, absolutely technology can change. Has changed. Has changed. I mean, it was available technologically ten years ago. You know, I mean, it's a different world. I mean, why should you go by standards that were adopted ten years ago? Your Honor, the standard that we're looking at today is whether or not this examination was offered to Ms. Enyart in a format that is accessible. Well, that's a matter of dispute, too, isn't it? As to whether that's the applicable requirement. Whether or not it's designed to best ensure, some people say. Well, there's the separate statute whether or not the regulation. All I'm saying, that's a matter of dispute. Okay. Well, I will get to that as well, Your Honor. Even if one accepts the premise that technology has changed, that does not make formats that for decades have been used by blind individuals to access tests, those formats remain accessible. But Judge Breyer found that it's not accessible to her. He found that as to this particular plaintiff, in his view, the exam was not accessible. In what way was that finding clearly erroneous? It was clearly erroneous in this way, Your Honor. It was against the overwhelming weight of the record evidence, and it was implausible in light of the objective evidence regarding Ms. Enyart's own history of accommodations. And here's what we know about that. We know that in 1999, she graduated from Stanford with a 3.5 grade point average, having majored in English and feminist studies. While there, she used readers and audio tapes. And she commented at the time, the electronic text wasn't available. So all of my textbooks were in an audio cassette format. So we know at that time she's gotten through college and done exceedingly well. Okay. But that's not a bar exam. That's college math. It's not the bar exam, Your Honor. But it's lengthy written material. Okay. We know that she then prepared. What's the closest thing you have to the bar exam? Is that the LSAT? The LSAT is the closest, a four-hour exam compared to two exams here. The MPRE, which is a two-hour exam, and then the multistate bar examination, which is a six-hour exam. But the closest in terms of standardized multiple choice exam is the LSAT. We know she also registered to take the GRE, which is also a standardized test. And at the time, she asked for a reader on that exam. And she said at the time, a reader isn't such a bad deal. And that was what, three or four years before? This was roughly 2003. Okay. So right before she took the LSAT exam. And I understand that she says that her condition has worsened or changed. She has said that her condition has worsened. Okay. The only testimony on that point was Dr. Damaris, who looked at her medical records and said it has not worsened since she took the LSAT exam. Well, the patient says it's worsened. Well, Your Honor, even if one accepts that it has worsened, that would not mean that a reader or a CD version, just focusing on those two formats, are no longer accessible. In fact, they ought to be more usable for the individual. And as Ms. Enyart herself has said, essentially, I can no longer visually read. I have become an auditory listener, reader, given the deteriorating condition of my vision. Your Honor, this case is one examinee, one disability, and one testing organization, but it has enormous implications. Hundreds of individuals request testing accommodations every year. Typically, the cases arise in this very context, where a party goes into court, seeks an irreparable or alleging irreparable harm, seeks a preliminary injunction shortly before the exam is administered. What we have is a case that has come to the Court on an appeal from mandatory preliminary injunctions. Under Winter, in order to prevail, she had to demonstrate that she was going to succeed on all four factors. Because it's a mandatory injunction that gives her the very relief that she would get only at the conclusion of trial, the Court should have approached the matter as one in which only serious or extreme damage documented in the record would support the preliminary injunction. We submit, Your Honor, that did not happen here. I'm going to focus on irreparable harm and likelihood of success, but particularly in light of irreparable harm, which is the first point we addressed in our briefs. In the initial preliminary injunction order, the district court identified two types of irreparable harm, psychological or emotional injury and professional stigma. Ms. Enyart hadn't argued that she would suffer either of those types of injury, and there was no record evidence to support it. On that record, it would be improper to conclude that there was immediate and irreparable injury consistent with the Winter standard. The plaintiffs didn't make much of an effort on the irreparable point. They argued you can presume that irreparable harm exists if we demonstrate a likelihood of success on the merits. The district court said, no, that's not right in light of Winter. You can no longer presume irreparable harm. You've got to demonstrate likely irreparable harm. That didn't happen here. What do you think a plaintiff would have to show to show irreparable harm in the testing context? I mean, there's only one February 2010 bar exam. Can you take that exam again? Your Honor, I think in the context of individuals taking exams, getting ready to take exams, that it is not irreparable harm if the only harm is a delay in the rule. Never. Never. Flat rule. Well, I can't contemplate every conceivable situation, but I think courts have gotten it right that have held that a delay in when you take an exam is not irreparable harm. Does it matter if it's given every week or every six months? Well, it certainly is an easier case for those exams that are administered every six months, once a year, like that. There are many other exams that are administered. I mean, if it's a driving test, if you flunk it on Monday, you can take it on Tuesday. You can take it on Tuesday. Oh, take it on the same day. Yes. But getting back to this, whether winter overruled these cases that say playing in our circuit as well as others. But first of all, you start with the constitutional violation case. You know, in many cases, well, a violation of the First Amendment is per se irreparable harm. You don't have to make a show. And then you get to the statutory cases like the ADA. So many words as well. Well, you know, the court should issue an injunction for a violation of the ADA. Court can issue a T.R.O. Right. Under the ADA. So there's a statutory authorization to issue a preliminary relief for a violation of the act. Now, Winters didn't address those kinds of cases. Right. Well, it was a statutory cause of action. No, what the statute says, you're entitled to a preliminary injunction if you show a violation. Right. Well, you didn't address that scenario. I don't believe the statute in that case said that. But the ADA allows injunctive relief. It doesn't say you may also go in and get free. By definition, every case you can get injunctive relief allows it. That's true, Your Honor. We're going beyond allowing it. We're talking about, you know, where the statute says you're entitled to it if you show a violation. Well, the statute doesn't say you're entitled to a preliminary injunction. It says the relief available to you is an injunction if, as an antineti, at the conclusion of the case, after we've had a full development of the record, the court has concluded that there has been a statutory violation. It doesn't say that either. It doesn't say that here. This is a preliminary injunction handled in an expedited fashion on an undeveloped record. Your Honor, in the second preliminary injunction, irreparable harm was addressed differently. It was addressed in this instance by the Court saying that the irreparable harm was the delay in her professional career. The Court relied upon precedent out of this Court, the Chalk decision. We submit the Chalk decision was a very different factual pattern where an individual was removed from his job that he had been a teacher for six years and placed in a very different job where he was writing grant proposals that didn't use his skills. And then at the also was an individual who the Court noted had AIDS and for whom every day was precious. This fact pattern is a very different fact pattern. You know, you're welcome to keep going, but you said you wanted to reserve time and you're free to keep going. Well, Your Honor, just quickly on the merits and then I'll come back. On the merits, our proposition is pretty straightforward, Your Honor. If you as a regulated party do precisely what the Department of Justice has said you should be doing and has urged testing companies to do in order to make an exam accessible to visually impaired individuals, if you provide auxiliary aids that are the very aids identified in the regulations as appropriate auxiliary aids for the visually impaired, if you do exactly what the National Federation of the Blind has demanded that other testing companies do in order to administer their exams in an accessible format. You don't think it has to be individualized in any way? I think it has to be individualized, Your Honor. So if someone who has absolutely no vision and couldn't use the Zoom text, for example, I mean, what would you make of that? If we had offered only Braille as the only option that we make available and the individual didn't read Braille, then that's not a suitable accommodation. But if we make all four available and if we have an individual with a history who has used at least one or more of those formats, then we have acted in a reasonable manner consistent with an individualized analysis. One of the things in the record, Your Honor, was a candidate who was blind, deaf, and didn't read Braille, and for that candidate we administered the exam on a computer using Zoom text. Thank you, Your Honor. Thank you. Okay. Thank you, Mr. McGregor. Good afternoon. My name is Daniel Goldstein. I'm here on behalf of Stephanie Enyart. May it please the Court. When the only question of law as it is here before the Court of Appeals is whether the district court abused its discretion in issuing its preliminary injunction and the terms of that preliminary injunction have expired, the appeal is moot. Can she take the exam again? I'm sorry. I couldn't hear you, Your Honor. Suppose she wants to take the exam again. Wouldn't this be the kind of thing that would be capable of repetition? And yet evade review? Yeah. It's capable of repetition, but it doesn't evade review. The ruling that both sides in this case fervently want, as Mr. Burgoyne stated with absolute accuracy, this case, not this particular issue before this Court, but this case is a particular moment to the entire disability community, especially the blind community. And what will not evade review, and which I hope very much will come before this Court, is after a final judgment, the question of what legal standard applies to testing entities like the NCBE with respect to blind people as primary reading method, primary method of learning. Well, if we held it the appeal is moot, what would happen? It would go back to Judge Breyer for further proceedings, or what would happen? Yes. There's a bond that was required in this case as a condition of the preliminary injunction. And the teaching of University of Texas v. Kamenisch is you go back and you try the case on the bond, and you fully develop the merits, and then the case can be reviewed on that basis. Because the question of entitlement to the bond presents the same issues. Suppose you go back to Judge Breyer and you say we give up, we dismiss the case, keep the bond. What happens then? Then it doesn't affect the analysis of whether it's capable of being reviewed. The voluntary choice by a party not to pursue a case doesn't deprive the court of jurisdiction. The issue of whether something abates the review is by its nature. Okay. Let's suppose we say, okay, it's the appeal is moot because the preliminary injunction is come and gone and the exam is come and gone. You go back to district court, you say we dismiss our case, keep the bond. Then there's another bar exam coming up again, and she applies for another preliminary injunction. We go through the whole thing all over again. I mean, this could go on forever under that scenario, couldn't it? Well, not as I recall the rule governing voluntary dismissals, Your Honor. I don't believe that I can unilaterally dismiss without prejudice. And if you know what I mean. You confess judgment. I mean, you figure out how we're doing it, but my point is you could get rid of the case and then the exam comes up again and you're back here. Well, I think the problem is even if theoretically I could do that, and I'm not quite sure why I'd want to, I mean, I don't particularly want to argue mootness, except that as an officer of the court, I've got to bring cameras to your attention. But the problem is even if we put mootness aside, I think all you can end up deciding here is under the Hinkle standard a pretty narrow question. Indeed, if I understand what the Ninth Circuit has now done in the Alliance for Wild Rockies, the serious questions test is alive and well on the first issue. If we go to the first issue. If it is moot, let me just think this through and tell me if I'm right or wrong about this. If it is moot, our obligation would be to dismiss the appeal and remand it to Judge Breyer to vacate his injunction, right? No. Because the the that would dissolve the bond and then you truly would make the case moot. And Kamenisch very carefully drew a distinction between mooting an appeal and mooting a case. And if you issue a vacater, then the order to post a bond is has just ceased to exist and you've just mooted the case. Is there any language in the second injunction that applies it to any future exams? No. We sought a continuing injunction and we did not get it. Had we gotten a continuing injunction that is addressing future exams, then this appeal would most definitely not be moot. But we didn't we didn't get that. All right. Now, let me ask you another question that goes to mootness. Now, I understand that that your client got the results of this final administration of the bar exam, right? Yes. That's correct. That's Tashima. Did those results. Well, my recollection of many years ago, I used to be on that committee about 30 years ago, but used to be a unsuccessful candidate to go in and examine the papers, you know, to see what happened. Is that still true? Do you know? I'm not certain. One can get a broken down score. What I want to know is whether or not she passed the multistate. Well. Oh, is that separately broken out? It is separately broken out. I did hear one other counsel try to go outside the record earlier today. So I'm somewhat timorously because this isn't yet in the record. But the answer to your question is she did not separately pass the multistate. So if she takes the bar exam again, she'll have to take the multistate again. Yes. So she should she choose to take the California bar, we would be going back for a third preliminary injunction. I don't think there's any question about that. This again, this is capable of repetition without any dismissal of the case. The question is whether the ultimate issues would evade review. The let me let me focus on that for a minute. Under Hinkson, you're going to be looking at two questions. Did the district court identify the correct legal standard for the issue before it? And second, were the court's finding fact findings and its application of those fact findings to the correct legal standard illogical and plausible or without support and inferences that may be drawn from the record. So the place you're going to start is the legal standard, which is winter as modified by two significant decisions from the Ninth Circuit after winter, one of which addresses your earlier question, Judge Tachima, about the scope of winter. Winter addressed the likelihood of irreparable injury, that we couldn't have the sliding scale test that allowed something less than a likelihood of irreparable harm. But it didn't address what is and isn't irreparable harm, the character of irreparable harm. And this circuit, since Judge Breyer's decisions in Antoninetti, looked at Title III particularly, and what Title III does say, since that question came up, is that Title III of the ADA allows the remedies that are available under 42 U.S.C. 2000-A3A, which provides that a person aggrieved by a violation of the Act may file a civil action for preventive relief, including an application for permanent or temporary injunction. And in Antoninetti, which was on a permanent injunction, the Court made clear, and it seems kind of obvious, if that's the only remedy you're allowed, there's been a congressional finding that being discriminated against is an irreparable harm. And this Court found, as a matter of law, that being discriminated against under Title III is an irreparable harm. And if it weren't, certainly Judge Breyer's decision, and it's ironic the distinction between the first and second decision, what really points to mootness. Could you reverse the first decision and affirm the second decision? But in the second decision, he clarified his thinking about irreparable injury and said the irreparable injury is the same as in chalk, the temporary deprivation of one's right to pursue one's living as a result of discrimination constitutes an irreparable injury. So then you go back to the first question, and this Court, now in alliance for Wild Rockies, has said the serious question of doctrine is alive and well when the balance tips sharply in the plaintiff's favor on the equities. So we don't, I don't think, get to find out what you think is the rule. We'd love to. The best insurer or the reasonable accommodation. Although I think, as Judge Breyer treated reasonable accommodation, he imported the notion of an equal opportunity to achieve, which is the core animating idea behind the ADA. So what would you have us hold today? I'm not, I want to make sure I understand exactly what you would have us do today. I think that what you do today is you dismiss the appeal as moot under the authority of Kamenisch, but you do not issue any vacator because you would be doing something then to, that would moot the actual case. If we don't dismiss the appeal, then we have to go into whether this is a reasonable accommodation that they offered her. Well, I think what you have to go into is whether there was a serious question on the record and whether the Court's findings of fact were under Hinkle permissible. And despite the valiant arguments by my brother here, Judge Breyer's findings were not against the overwhelming weight of the evidence. In law school, what she used was JAWS and ZoomText. It was how she learned the material and was tested on the material in law school. Well, yeah, but their position is that what they have accommodated her with is more than sufficient for her to pass the test and that it's been suggested by regulatory agencies or other groups and that it's adequate. It doesn't have to be a perfect accommodation. It's got to be an adequate accommodation. Well, with all respect, I think what they said is that it has to be suitable. That's what they said in page 31 of the book. Well, suitable and reasonable. But it doesn't have to be a perfect accommodation. It doesn't have to be what you want. It has to be a reasonable. Well, what it has to be, what the regulation says it has to be is that which best ensures that the result will reflect her aptitude and knowledge rather than her disabilities. And you were on a panel that made it very clear why we have to pay attention to that regulation. In Helen L. v. Dodario, the question came up of what respect should be given to the Department of Justice regulations. And you have to keep in mind here that the regulation, the best insured regulation under Title III is with one small exception verbatim the regulation that applies to giving tests under Section 504 of the Rehabilitation Act. The one exception is they split the infinitive the second time around. Instead of saying to best insure, they say — I'm sorry. Instead of saying best to insure, as they did in 504, they say to best insure. But the Department of Justice was given, as you pointed out in the Helen L. case, the authority to promulgate regulations, and they were told, and this is also addressed in the Helen L. case, they were told to follow 504 and that 504 regulations have the force of law. And the statutory history indicates that Congress said the reason we're enacting 12189 is to fill in the gap left for entities that give tests that aren't covered by 504, such as the National Conference of Bar Examiners. So there can't be any question. You have to give the deference to this regulation. And if it's best insure, that's a single standard. What best is a superlative? What is the accommodation? It's bounded by fundamental alteration and undue burden, not argued below. What is the accommodation that will ensure that she has the equal chance to compete? But Judge Breyer used the NCBE standard, and he says a reasonable accommodation is one that offers an equal opportunity. And he found plenty of facts, including Dr. Surratt, the treating physician. And in these cases, you look at what the treating physician says. He said this is the only way she can retain the information. Their expert, Dr. Damari, said in deposition she needs both an audio and visual input. This was the one accommodation that did that. The Sylvana Rainey, who was examiner, who was the expert on assistive technology, explained that you can't be focused on trying to learn a new way to take in information and take the bar exam the same way. There's something called automaticity, where you learn to read and you stop paying attention to how you read, and you pay attention instead to the content of what you read. And that's what she had done for three years of law school. This is how she took in the information. To ask her to do it differently would be like asking you to read this case upside down. I have no doubt, Judge, you could decode the language, but you wouldn't have any – well, you might. I wouldn't have any mind left over to think about what it meant because of the energy I'd have to put into the act of reading. So the judge here had more than a permissible basis for his finding that this was the one reasonable accommodation. You know, I think I just wasn't zeroing in on what you were saying before in answer to my question about how this is not the sort of case that would evade review. It seems to me – I just can't get my mind around the fact that in every one of these preliminary injunction cases, an injunction would issue, take the exam, comes up on appeal, and then the exam has come and gone, and then, you know, we start this all over again. I just don't see how – I guess what you just said makes sense to me, Judge Silverman, but it doesn't conform to Kamenich and Honig. Because as long as the bond is there – Then the bond itself would prevent review of this. I mean, under the way you have – No. The bond assures the review. No, the bond doesn't insure review. How would the bond insure review? If you go back and say, here's your bond, we give up, you forfeit your bond. Well, I'm not – I guess I never thought of why we wouldn't want to get a ruling on this so that we don't have to do this over and over and over again for every blind law graduate. I mean, please understand, I have an obligation to present the Kamenich argument, and just as I'd love to be able to say to you, oh, you can go right to the rule, even though your mootness aside, you have a very deferential kind of review here, which is simply whether serious questions are proposed. I mean, the problem is, if you conclude that there is no mootness here, it's the question of how you go past the serious questions test and address the question of what the standard actually is. I certainly hope that you find a way to do it. Thank you very much. Thank you, Mr. Guilty. Thank you. Mr. Guilty. Thank you very much. First, quickly on the question of mootness, I'll just point out that when we had originally requested expedited review and that this case be stayed, we had argued there's a risk of mootness here we want to avoid. The plaintiff came in and said, not to worry, this case won't become moot on appeal, see Brown v. Board of Bar Examiners. And I think the Ninth Circuit got it right in that case. This is a case, the quintessential case, where it will evade review. Nobody is going to want to go back and spend hundreds and hundreds of thousands of dollars litigating a case in the interest of a $5,000 bond. That just isn't going to happen as a realistic matter. These cases do evade review. That is a reality. On the questions the Court mentioned, there was the statement that Ms. Henyard had used JAWS and ZoomText in law school, and that's what she's used to using in order to effectively access content. In fact, there were three versions of her experience with law school exams. The first version was that she only used JAWS and ZoomText in law school. The second version was she had used it every time except once, and it was a disaster, and that was the statement relied upon in the trial court. And the last version was, in fact, that she had used readers to take several of her law school exams, her first-year exams and some of her exams in her second year, and she had that. She had asked her dean to include that in the application to the bar examiners but then said, no, let's take that out because my lawyers want to keep the record clean. So there were three different versions on her use of readers. Well, her basic point now, as argued by counsel, is that the accommodation that you want to offer or are offering is not reasonable or is not a reasonable accommodation. And that's a question that was resolved against you by the district judge, correct? He resolved the question of whether or not this was the only effective means for her to access content. Okay. That's correct. In effect, he said what you offered was not. Now, what was an abuse of discretion by the district judge in making that ruling? Well, the abuse of discretion, Your Honor, is the weight of evidence regarding her own personal history using readers. She scored 160 on the LSAT. She did remarkably well. She did much better on the LSAT than she has done on the MBE. Yes, but Judge Breyer explained that. I mean, he has his explanation. She's gotten worse. The technology's gotten better. I mean, you know, he's got he has you may agree or disagree, but he's got his reasons for why he did what he did. We have to find that it's, you know, just it's an abuse. It's clearly wrong, not just a disagreement. Well, let me address quickly, Your Honor. I'm not going to use up all my time. Well, you have, but go ahead. The question you raised, the technology's a lot better. Shouldn't we have to do more now that there's better technology? The identical argument was made in the recent Harkins amusement case where the court said it may well be that technology has gotten better, but that doesn't impose a greater obligation than we find in the statutory language and the regulations. And the court went on to look at the regulations. By the way, speaking of the statutory language, do you agree that the DOJ's regulation is entitled to Chevron deference? I agree that you cannot. I agree that in the ordinary course, regulations are entitled to Chevron deference unless they are arbitrary and capricious and inconsistent with the statutory obligation. It is our view that if you were to ensure, best ensure, if you were to interpret that term as imposing an obligation greater than effective access, you would be interpreting a regulation beyond the scope of the statutory language, which cannot be done. And we've cited cases which have held that you cannot create a private right of action to enforce a regulation which exceeds the extent of the statute. I'd also point out that here Judge Breyer said that even that interpretation in his view exceeded the meaning of the access language. The same thing with Judge Motz, who denied where they came in and three plaintiffs made the identical argument, the only way we can effectively take this exam is if you allow us to take it on a computer using JAWS and ZoomText. Judge Motz denied the preliminary injunction. Those three candidates have since tested using readers, and those three examinees have all passed the Maryland bar exam. The challenge here is you don't know what's going to best ensure. You don't know what is really going to be the best means of access. Our client has done what it reasonably could in light of statutory guidance, regulatory guidance, a consent decree which is entitled to judicial deference, as well as statements from the Blind Advocacy Group, which is the leading spokesperson for the blind. Thank you very much, Your Honor. Mr. Goldstein, thank you, too. The case just argued is submitted. We'll stand at recess for today. All rise.
judges: Cowen, Tashima, Silverman